**In the Matter of the Application of Willie HORNE, Plaintiff,**

**v.**

**Thomas A. COUGHLIN, III, Commissioner New York State Department of Correctional Services, Philip Coombe, former Superintendent, Eastern Correctional Facility, Donald Selsky, Coordinator, Inmate Discipline, Arthur Kracke, Lieutenant, Eastern Correctional Facility, and Joseph A. Demskie, Captain, Sullivan Correctional Facility, in their individual and official capacities, Defendants.**

**No. 86–CV–672.**

United States District Court,
N.D. New York.

Oct. 15, 1991.

Prisoners' Legal Services of New York, Poughkeepsie, N.Y., for plaintiff; Deborah Schneer, Ken Stephens, David C. Leven, of counsel.

Robert Abrams, Atty. Gen., Albany, N.Y., for defendants; Terrence X. Tracy, Asst. Atty. Gen., of counsel.

MEMORANDUM–DECISION
AND ORDER

McCURN, Chief Judge.

Plaintiff seeks recovery pursuant to 42 U.S.C. § 1983 and pendent state laws for injuries he allegedly suffered during his incarceration in a correctional facility operated by the New York State Department of Correctional Services ("DOCS"). The defendants were all employed by DOCS at the time of the alleged injuries.[1]

1. Defendant Coombe was Superintendent of Eastern Correctional Facility until February 20, 1985. It appears from the record that Coombe remained in DOCS's employ thereafter, as Deputy Commissioner of Corrections. *See* Affidavit of Deborah Schneer (10/9/90), exh. # 15 (May 30, 1985 Memorandum from "Phillip Coombe, Jr., Deputy Commissioner"). For the reasons discussed herein, Coombe's status after February 20, 1985 is inconsequential to this Court's review of the present matter.

The matter now before the Court is a review of Magistrate Judge Smith's Report–Recommendation denying defendants Coughlin's and Coombe's motions for summary judgment. The defendants have filed timely objections to the Magistrate Judge's report, and the plaintiff has filed a timely response to defendants' objections. After consideration of the record below, the Magistrate Judge's recommendation, the parties' objections and responses thereto, and the applicable statutes and case law, this Court accepts the Magistrate Judge's Report–Recommendation in its entirety. The rationale for this Court's decision is set forth herein.

## I. STATEMENT OF FACTS

In 1984–85, the plaintiff, Willie Horne, was an inmate in at the Eastern Correctional Facility ("Eastern") in Napanoch, New York. On December 13 or 14, 1984, plaintiff was charged by the Eastern administration with violating prison rules as set forth in the "Standards of Inmate Misbehavior." To that end, plaintiff was issued an "Inmate Misbehavior Report" which alleged that the plaintiff impermissibly (1) encouraged sexual acts, (2) verbally interfered with an employee, and (3) made verbal and physical threats against an employee.

Within the same week, the Eastern administration held a disciplinary hearing on the charges against plaintiff. Plaintiff was found guilty of all three charges. The procedures employed by the Eastern administration during and subsequent to the disciplinary hearing give rise to plaintiff's action before this Court. The gravamen of the complaint is that the defendants were aware that plaintiff "has an IQ of 58 and is a functional illiterate," yet nonetheless subjected him to strict punishment without providing him with a "counsel substitute" at the hearing. Plaintiff's Complaint, at ¶ 1. The ultimate punishment against plaintiff included confinement to Eastern's Special Housing Unit ("SHU"), a special area of the prison in which plaintiff had little if any contact with other prisoners. As such, plaintiff was allegedly deprived of liberty without the due process of law guaranteed to him by the fourteenth amendment.

Eastern is operated by DOCS. Defendant Thomas Coughlin was (and still is) the Commissioner of DOCS; defendant Philip Coombe was the Superintendent of Eastern until February 20, 1985. In their current motion, defendants Coughlin and Coombe argue that they were mere administrators and/or supervisors, and therefore were not personally involved in the transactions about which the plaintiff complains. Therefore, the defendants argue, they cannot be held liable for any damages incurred. Accordingly, defendants Coughlin and Coombe move for summary judgment.

## II. DISCUSSION

Magistrate Judge Smith stated the correct standard for reviewing motions for summary judgment. *See* Report–Recommendation, at 2 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Electr. Indus. v. Zenith Radio*, 475 U.S. 574, 585, 586, 106 S.Ct. 1348, 1355, 1356, 89 L.Ed.2d 538 (1986)). Given the nature of defendants' motion, reiteration of the rule is warranted here. The Second Circuit outlined the summary judgment standard most concisely in a remarkably similar case, *Williams v. Smith:*

Since personal involvement [of the defendants] is a question of fact we are governed by the general rule that summary judgment may be granted only if no issues of material facts exist and the defendants [are] entitled to judgment as a matter of law.... The party seeking summary judgment bears the burden of establishing that no such dispute exists.... All ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought.... When, however, a party moves for summary judgment, and documents his motion, setting forth specific facts denying the claims, the opposing party must, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) .... Mere

conclusory allegations or denials will not suffice.... However, if "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."

781 F.2d 319, 323 (2d Cir.1986) (citations omitted).[2]

The defendants argue that summary judgment is warranted because they were not personally involved in the incidents giving rise to plaintiff's claim, and therefore cannot be held liable under section 1983. Defendants' Memorandum of Law in Support ("Def.Mem."), at 3–5; Defendant's Objections ("Def.Obj."), *passim*. It is true that a defendant cannot be held liable under section 1983 unless he was personally involved in the alleged deprivation of rights. *E.g. Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987) ("Dismissal of a section 1983 claim is proper where, as here, the plaintiff 'does no more than allege that [defendant] was in charge of the prison.'") (citation omitted); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985). In *Ayers*, the Second Circuit rejected a prisoner's section 1983 claim against Coughlin because a section 1983 claim "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply." *Ayers*, 780 F.2d at 210 (citations omitted).

It is also true, however, that the defendants in this case need not have *directly* participated in the alleged constitutional deprivation to be held liable under section 1983. *Williams*, 781 F.2d at 323. The Second Circuit has explicitly held, most notably in *Williams v. Smith*, that a prison administrator can be held liable in a prisoner's section 1983 action if the administrator created or condoned a policy which caused deprivation of constitutional rights. *Id.* at 323 (citing *McCann v. Coughlin*, 698 F.2d 112, 121 (2d Cir.1983); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)). "A supervisory official may be liable [under § 1983] because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Id.*

Turning to the present case, the Court notes that the defendants have not argued that their alleged activity was constitutionally permissible. Rather, the sole basis of the defendants' argument for summary judgment, and therefore the scope of this Court's inquiry, is their contention that they were not personally involved in the alleged incidents. Therefore, if this Court finds that defendants had sufficient personal involvement in plaintiff's alleged deprivation, then their motion for summary judgment is defeated.

In light of *Williams*, 781 F.2d at 323, this Court agrees with Magistrate Judge Smith's conclusion that the plaintiff can prove a set of facts upon which a reasonable trier of fact could hold the defendants liable under section 1983. With respect to defendant Coughlin, the Court is especially persuaded by plaintiff's reliance on sections 112 and 138(6) of the New York Corrections Law. Section 112 imposes on the Commissioner the *duty* to create the

---

**2.** One of defendants' objections to Magistrate Judge Smith's Report–Recommendation is that the Magistrate Judge erroneously utilized the standard applicable to consideration of motions to dismiss a complaint made pursuant to Fed. R.Civ.P. 12(b)(6), instead of the summary judgment standard required under Rule 56. *See* Defendants' Objections, at 3. This Court rejects Defendants' objection, and agrees with plaintiff's assessment that Magistrate Judge Smith's Rule 12(b)(6) analysis was necessitated by defendants' arguments. Specifically, the defendants began their argument with a challenge to the facial sufficiency of plaintiff's complaint, *see* Def. Mem. at 3-4 ("the complaint is void of any

allegations which make a facial showing...."), thus rendering Magistrate Judge Smith's Rule 12(b)(6) analysis in response thereto entirely necessary and appropriate.

Furthermore, Magistrate Judge Smith's ultimate disposition of the matter was based upon application of the correct standard for summary judgment. *See* Report–Recommendation, at 3 ("it is not beyond doubt that plaintiff could prove no set of facts under one of the *Williams* tests to support his claim of their personal involvement"). *Cf. Williams*, 781 F.2d at 323. Therefore, defendants' argument that Magistrate Judge Smith applied an improper standard is without merit.

disciplinary policies and procedures for the State's correctional facilities, including Eastern. N.Y.Correct.L. § 112(1) (1990) (commissioner *shall* make rules and regulations);[3] *see Konigsberg v. Coughlin*, 124 A.D.2d 262, 508 N.Y.S.2d 270 (3d Dep't 1986) (construing N.Y.Correct.L. § 112(1)).

Section 112 is so persuasive because the plaintiff has averred that the commissioner's constitutionally infirm policies concerning appointment of counsel substitutes were in effect in 1984–85 when he (plaintiff) was subjected to the DOCS disciplinary procedures. *See* Affidavit of Deborah Schneer (10/9/90) ("Schneer Aff."), at ¶ 4. In other words, under the authority granted him by section 112, defendant Coughlin allegedly enacted or otherwise condoned policies governing facilities such as Eastern, and those policies operated to deprive plaintiff of his constitutional rights. *See generally id., passim.*

Coughlin argues that he was not personally involved in setting the policy concerning counsel substitutes because "in 1984 and 1985, such determinations were left to the discretion of the Hearing Officers." Def. Obj., at 4. Coughlin's argument wholly misses the point. By Coughlin's express assessment, his policy was to allow Hearing Officers to determine whether counsel substitutes were warranted. *See id.* Plaintiff alleges that Coughlin's *laissez-faire* policy is itself unconstitutional:

> The absence of written documents, policy or procedure ..., the defendant hearing officers' lack of knowledge about their authority or obligation to provide plaintiff with counsel substitute ..., the absence of instruction to hearing officers, employee assistants or superintendents ..., and the erroneous view of at least one policy maker ... demonstrate an absence of adequate, or any, policy on this issue.

Schneer Aff., at ¶ 5. Since Commissioner Coughlin, by his own admission, ratified or condoned the challenged counsel substitute policy in effect at Eastern in 1984–85, he

was therefore sufficiently "personally involved" to be held liable to the plaintiff under section 1983 for deprivations cause by the policy. *Cf. Williams*, 781 F.2d at 323 (Coughlin "allowed such a policy to continue").

The case at bar is noticeably similar to *Young v. Kihl*, 720 F.Supp. 22, 23 (W.D.N.Y.1989). In *Young*, a prisoner withstood a motion to dismiss because he averred in his affidavit that Coughlin had "sanction [sic], ratified, condoned, [and] participated in the action that caused the violation." *Young*, 720 F.Supp. at 23. This Court adopts the reasoning set forth in *Young*, and concludes that the commissioner, being the party responsible for enacting or upholding the policies in question, was sufficiently involved in this case to be held accountable to the plaintiff under section 1983. *Cf. id.; Williams*, 781 F.2d at 323.

 With respect to defendant Coombe, he too denies personal involvement in setting the policy concerning counsel substitutes. Even accepting Coombe's contention as true, this Court nonetheless finds sufficient evidence upon which a reasonable trier of fact could conclude that Coombe was personally involved in causing plaintiff's claimed constitutional deprivations. In so finding, this Court is guided in part by the Second Circuit's statement that "a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event." *Williams*, 781 F.2d at 323–24 (citing, *e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir.1972)). This Court is most persuaded, however, by the Second Circuit's ruling in *McCann v. Coughlin*, 698 F.2d at 125. In *McCann*, the court found a prison superintendent to be "personally involved" for section 1983 purposes because of his gross negligence. The court specifically pointed to the superintendent's "knowledge that unconstitutional practices were taking place, and [his]

---

**3.** Section 112 provides, in pertinent part, that "[t]he commissioner of correction ... shall make such rules and regulations ... for the government of the officers and other employees

of the department assigned to said facilities ... and for the government and discipline of each correctional facility, as he may deem proper...." N.Y.Correct.L. § 112(1).

failure to act on the basis of this information," in concluding that he could be held liable under section 1983. *Id.* at 125.

For the same reasons, a reasonable trier of fact in the present case could find that Coombe was grossly negligent because, according to plaintiff, he (Coombe) knew of the plaintiff's retarded condition, and also had knowledge of the proceedings against plaintiff and his subsequent confinement. Again by defendants' own admission, the Hearing Officers at Eastern were directly responsible for determining whether to assign a counsel-substitute. *See* Def. Obj., at 4. Without passing judgment on the persuasiveness of plaintiff's claims, the Court holds that a reasonable trier of fact could conclude that Coombe's act of allowing the hearing and subsequent punishment to proceed in the facility he managed, without correcting the alleged constitutional infirmity, constituted gross negligence. *See McCann v. Coughlin*, 698 F.2d at 125.

Coombe's contention that he could not have been personally involved because he was no longer Superintendent of Eastern after February, 1985 is at odds with plaintiff's assessment of when the constitutional deprivations occurred. *Compare* Def. Obj., at 2–3 ("as of February 21, 1985, [Coombe] no longer held that position") *with* Schneer Aff., at ¶¶ 4–6 (citing instances of Coombe's misconduct while at Eastern). Coombe's argument therefore presents a genuine issue of material fact, to be considered by the trier of fact. *See* Fed.R.Civ.P. 56.

### III. CONCLUSION

Without passing judgment on the merits of plaintiff's case, this Court agrees with Magistrate Judge Smith's conclusion that "it is not beyond doubt that plaintiff could prove no set of facts under one of the *Williams* tests to support his claim of [defendants'] personal involvement" in the deprivation of his constitutional rights. Since defendants' alleged lack of personal involvement in the incidents giving rise to plaintiff's claim was their sole basis for summary judgment, and this Court rejects that argument, this Court adopts Magis-

trate Judge Smith's denial of defendants' motion for summary judgment.

Accordingly, defendants' motion for summary judgment is denied.

IT IS SO ORDERED.